AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| LARON LANECE LARKIN, | ) | Case No. 13-8167-DLB |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 31, 2012__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. §§ 371, 641 | Conspiracy to steal or convert more than $1,000 in funds belonging to the United States, and theft or conversion of more than $1,000 in funds belonging to the United States. |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Paul R. Hollinger, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3-29-2013

*Judge's signature*

City and state: West Palm Beach, FL

U.S. Magistrate Judge Dave Lee Brannon
*Printed name and title*

## AFFIDAVIT

I, Paul R. Hollinger, being duly sworn, depose and state:

### INTRODUCTION AND BACKGROUND

1. I am an agent with the Federal Bureau of Investigation and have been so employed since May 2005. I am currently assigned to the White Collar/Economic Crime Squad, and my duties include investigating violations of federal law. In that time I have worked several complex fraud investigations involving identity theft and I have become familiar with the methods and means used by individuals engaging in tax return fraud and identity theft. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code (USC), § 2510 (7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, USC §§ 286, 371, 1028, and 1029.

2. The following information is based on my review of various records obtained during this investigation, interviews of victims and/or witnesses, and discussions with fellow law enforcement officers. Where the statements of others are related herein, they are related in substance and in part and are not verbatim. Because this affidavit is being submitted for the limited purpose of establishing probable cause to support a criminal complaint, I have not included each and every fact known to me concerning this investigation; rather, I have set forth a summary of the investigation to date in order to establish probable cause for the issuance of a criminal complaint charging LARON LANECE LARKIN with conspiracy to commit theft or conversion of government funds, and substantive theft of government funds, all in violation of Title 18 USC §§ 371 and 641.

3. On or about August 31, 2012, an officer with the City of Boca Raton Police Department was conducting surveillance, in part due to a rash of burglaries of vehicles at local gas stations.

The officer sat in an unmarked police vehicle at a Chevron gas station located at 801 W. Yamato Road in Boca Raton, Florida. During the surveillance, the officer observed a silver Hyundai Sonata, bearing Florida license plate 332JPL, enter the gas station lot and park at the front door of the store. The officer's interest in this vehicle was piqued when he observed the vehicle's window tint which appeared to be well below the legal limit for light transmittance. The officer then ran the vehicle's license plate in the Florida Driver and Vehicle Information Database and learned the vehicle was actually a rental car further arousing the officer's suspicions. The vehicle sat at the front door of the store for several minutes before anybody exited the vehicle. After a few minutes, the officer observed a black, female (LARON LANECE LARKIN) exit the front passenger compartment of the vehicle. LARKIN walked around the gas station peering into several vehicles before going into the store. A few minutes later, LARKIN walked out of the store and returned to the front passenger compartment of the silver Hyundai. LARKIN did not appear to be carrying any items in her hands from the store. The vehicle then departed the gas station failing to make a stop at the stop sign before turning right onto W. Yamato Road. The officer subsequently conducted a traffic stop on the vehicle at the corner of W. Yamato Road and Congress Avenue in Boca Raton, Florida.

4. While speaking to the driver, a person later identified as having the initials "B.J.J.", the officer smelled an odor consistent with marijuana emitting from the interior of the vehicle. The officer identified the female in the front passenger seat as LARON LANECE LARKIN. There was also an individual in the rear compartment of the vehicle who was subsequently identified as having the first and last initials "E.F.". Based upon the odor of marijuana emitting from the vehicle and given the fact that the vehicle and occupants matched a BOLO issued by the Coconut Creek Police Department (CCPD) stating that a silver, new, four-door vehicle (possibly a Honda) occupied by at least two black males, committed a burglary of an automobile in their city earlier

that morning, the officer separated the occupants and advised them of their Miranda Warnings. The officer interviewed each occupant of the vehicle separately pertaining to their activities leading up to the traffic stop. All three made conflicting post-Miranda statements regarding their activities and associations with each other. During the traffic stop the officer was alerted that E.F and B.J.J. both had outstanding warrants. B.J.J. had an outstanding warrant from Miami for Possession of Marijuana less than 20 Grams and E.F. had an outstanding warrant for Fraud out of Sarasota County. E.F and B.J.J. were both placed under arrest as a result of the outstanding warrants. They were also charged with Loitering and Prowling. LARKIN was also placed under arrest for Loitering and Prowling.

5.  Based upon the officer's detection of the scent of marijuana and to take inventory, the officer conducted a search of the vehicle. The officer located in LARKIN's purse and wallet several small pieces of a leafy green substance positively determined to be marijuana in a field test conducted by the officer. The officer also found a Netspend Visa Debit card wrapped in a piece of cardboard. The cardboard had hand-written on it the name "M.D. Jr." with a social security number, date of birth and the address 815 Hallandale Beach, FL., 33009. The cardboard cover also had the amount "$7,374" and other hand-written notations on it. When asked about the Netspend card, LARKIN stated that it was in her purse when she purchased it and she did not know who "M.D. Jr." was. Also found in LARKIN's wallet was a photocopy of a Florida driver's license and social security card in the name of "T.R.S." The officer also found a social security card issued to "R.E.H." Also located in LARKIN's purse was a hand-written note identifying a Bankcorp checking account number and routing number.

6.  Located in B.J.J.'s wallet were two additional Netspend Visa Debit cards identical to the card found in LARKIN's purse. The officer located in the center console of the vehicle a bill from an attorney's office issued to E.F. The bill had hand-written on it several four digit

3

numbers with check marks on the left side of the numbers. To the right side of the numbers were varying amounts of money. The officer also found several receipts from gas stations in multiple Florida cities such as: Melbourne, Fort Pierce, and Merritt Island. Another officer located in the rear passenger side door handle pocket ten $20 bills. He also located in the rear of the front passenger seat a bundle of money folded in half and bound with a rubber band. The bundle contained $1,500 comprised of $20 bills. That officer also located hidden under the plastic trim covering the middle post which separated the front passenger door from the rear passenger door, a larger bundle of money folded in half in the same manner and bound with an identical rubber band. That bundle totaled $3,000 comprised of three $100 bills and the rest $20 bills. That officer also found three Netspend Visa Debit cards identical to those found in LARKIN's purse and B.J.J.'s wallet. The cards were wrapped in a cardboard cover and each had hand-written on them different names, social security number, dates of birth, and addresses. Two cards had the amount $7,374 hand-written on them and the other had the amount $7,268 written on it. Six additional Netspend PayPal Debit Mastercards were found hidden inside the rear of the driver seat. Each of the six cards were wrapped and marked in similar hand-writing with different names, social security numbers, dates of birth, and addresses on them.

7. All three individuals were transported to the Boca Raton Police Department for processing. Because it was suspected the three individuals were engaged in fraudulent activities to include identity theft, the three individuals were interviewed by Boca Raton Police Department detectives and an Internal Revenue Service (IRS) special agent. B.J.J. invoked his right to remain silent and did not provide a statement. LARKIN and E.F. waived their rights and provided statements to the Boca Raton Police Detective.

8. LARKIN's CONFESSION: LARKIN stated B.J.J. and E.F. picked her up in Miami and proceeded to make multiple stops at gas stations in order to "bust cards" at the automated teller

machines (ATMs) at the gas stations. LARKIN observed B.J.J. go inside the gas stations to use the debit cards to withdraw money from the ATMs. After several stops at the gas stations, LARKIN observed B.J.J. pull a large amount of cash from his pocket and hand it to E.F. in the back seat. LARKIN advised that B.J.J. provided her with the debit card wrapped in the cardboard that was found in her wallet. LARKIN went on to explain that they have been doing this all week and have driven as far north as Tallahassee to withdraw money. LARKIN admitted that B.J.J. and E.F. had been getting money off the debit cards in their possession. She then admitted that E.F. had described the fraudulent tax return filing scheme by which fraudulent tax refunds were being obtained. She indicated that they were using the debit cards in connection with that scheme. LARKIN knew that B.J.J. and E.F. did not have jobs. She further stated that the debit cards had been purchased at various 7-11 stores, a claim later corroborated by law enforcement. From historic knowledge of fraudulent tax refunds schemes, it is apparent to law enforcement that B.J.J. and E.F. caused the filing of fraudulent tax refunds using stolen identity information and then caused fraudulent refunds to be uploaded to the debit cards. LARKIN also stated they had made approximately between 30 to 50 stops per day with each withdrawal ranging between $400 and $800. LARKIN identified B.J.J. as the leader/organizer of the scheme. LARKIN was told she would receive $250 for her role in the scheme which netted them approximately $10,000 per day according to LARKIN. LARKIN explained that in order to extract money from the ATM machines she had to insert the card into the machine and enter a password which was provided to her by B.J.J. in each instance she used the card.

9.   B.J.J. and E.F. both denied ownership of the cash found in the vehicle. All three individuals denied ownership of a Metro PCS cell phone also found inside the vehicle. All three individuals were charged with Organized Scheme to Defraud and Identity Theft in addition to

5

Loitering and Prowling. LARKIN had the additional charge of Possession of Marijuana less than 20 grams. The three individuals were booked into the Palm Beach County jail.

10. The following is a list of items that were located during the inventory search of LARKIN, B.J.J., E.F., and the Hyundai:

a. 6 Netspend Debit Visa Cards (various identities);
b. 6 Netspend Debit MasterCards (various identities);
c. A photocopy of a Florida driver's license and a social security card in the name of "T.R.S.")
d. A Social Security Card in the name of "R.E.H."
e. $4,700.00 in U.S. Currency.
f. Metro PCS Cell Phone Serial # Z7H9MB1191915480

11. Based on the detective's experience, the detective believed the information above was being used to commit tax fraud. The detective contacted "M.D. Jr.", whose name and personal information were written on the cardboard wrapper covering one of the Netspend Debit cards. "M.D. Jr." confirmed he resides in Connecticut, that he did not know LARKIN, B.J.J. or E.F., and he did not authorize any of those individuals to utilize his personal information for any purpose. The detective subsequently contacted four other individuals, "D.W."; "C.A."; "T.S."; and "H.M." whose names and personal information were also identified during the traffic stop. Those four individuals reported to the detective that they did not know LARKIN, B.J.J., or E.F. and they did not authorize any of those individuals to utilize their personal information for any purpose. Each of them confirmed they had no knowledge of the Netspend debit cards identified during the search.

12. The detective submitted a subpoena to NetSpend for information pertaining to the twelve Visa/Mastercard pre-paid debit cards. The detective received information that these cards were issued to individuals with the following names: (1) "C.H."; (2) "M.D."; (3) "M.K."; (4) "W.A."; (5) "A.P."; (6) "H.M."; (7) "D.W."; (8) "T.S."; (9) "P.M."; (10) "A.S."; (11) "H.M."; and (12)

6

C.A.". Ten of the twelve cards had U.S. treasury checks (tax refunds) credited in the names of various individuals (none of them being LARKIN, B.J.J., or E.F.). Each of these deposits ranged from approximately $7,200 to approximately $7,400 and were credited to the pre-paid debit cards between August 23, 2012 and August 26, 2012. The IRS confirmed attempts were made to obtain tax refunds around this same time period in the names of two other persons relating to pre-loaded debit cards also found in the same car, but that the IRS had rejected the tax filings as fraudulent. There were subsequent withdrawals on the other cards at various ATMs and at various Wal-Mart stores between August 27, 2012 and August 31, 2012 in the South and Central Florida area between Vero Beach and Fort Lauderdale, Florida.

13. On September 7, 2012, a latent fingerprint examiner with the Boca Raton Police Department conducted fingerprint analysis of an unknown fingerprint which was found on one of the Netspend Debit Visa cards (ending in 1094) located inside the Hyundai. The examiner compared the unknown fingerprint to the known fingerprint standards of LARKIN, B.J.J., and E.F. The examiner was able to determine that the unknown fingerprint left on the Netspend Debit Visa card was a match to LARKIN's left thumb. Larkin's fingerprint was also positively identified on PayPal MC Debit card ending in 1400.

14. On September 28, 2012, a latent fingerprint examiner with the Boca Raton Police Department conducted fingerprint analysis of an unknown fingerprint found on the Netspend card packaging with the name "Monica Key". The examiner compared the unknown fingerprint to the known fingerprint standards of LARKIN, B.J.J., and E.F. The examiner was able to determine that the unknown fingerprint left on the Netspend card packaging with the name "Monica Key" was a match to B.J.J.' right thumb.

15. A detective from the Boca Raton Police Department spoke to a representative of Netspend who advised the detective that the Netspend card ending in 1094 was used on August

7

31, 2012 at 1358hrs and 1359hrs at a BP gas station located at 290 W. Copans Road, in Pompano Beach, Florida for withdrawals of $300 and $200. On September 7, 2012, the detective met with a manager of the BP gas station who provided the detective with a CD containing video surveillance from August 31, 2012. The detective observed on the video, an individual matching LARKIN's description, complete a transaction at the ATM at the times specified by the Netspend representative.

16. A review of the transactions from the 12 pre-paid debit cards shows that approximately $73,000 in funds was loaded onto them in U.S. Treasury Check deposits on or about August 2012 and that there was at least $43,000 in ATM withdrawals and money order purchases made on these cards between approximately August 27, 2012 and August 31, 2012 at various ATMs and at various Wal-Mart stores in the South and Central Florida area between Vero Beach and Fort Lauderdale, Florida consistent with what LARKIN had admitted in her statement.

17. Based on the foregoing, your Affiant respectfully submits that there is probable cause to believe that LARKIN committed the following crimes, conspiracy to steal or convert over $1,000 in monies of the United States, that is, fraudulent federal income tax refunds, and substantive theft or conversion of U.S. government funds exceeding $1,000, all in violation of Title 18, United States Code, §§ 371, and 641.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

PAUL R. HOLLINGER, SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn to before me on this 29th day of March 2013.

DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 13-8167-DLB

UNITED STATES OF AMERICA

vs.

LARON LANECE LARKIN,

        Defendant.
_____/

CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  _____ Yes __X__ No

        Respectfully submitted,

        WIFREDO A. FERRER
        UNITED STATES ATTORNEY

BY: _____
        STEPHEN CARLTON
        ASSISTANT UNITED STATES ATTORNEY
        Steve.Carlton@usdoj.gov
        Admin. No. A5500011
        500 S. Australian Avenue, Suite 400
        West Palm Beach, FL 33401-6235
        Tel: (561) 820-8711
        Fax: (561) 820-8777